## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| BILLY LOVE<br>individually and on behalf of all others<br>similarly situated,<br><br>　　　　　　　Plaintiff,<br>v.<br><br>ESO Solutions, Inc.<br><br>　　　　　　　Defendant. | Case No.  1:23-cv-01577<br><br>CIVIL ACTION – CLASS ACTION<br><br>JURY TRIAL DEMANDED |

### CLASS ACTION COMPLAINT

Plaintiff Billy Love, individually and on behalf of the Class defined below of similarly situated persons, who brings this Class Action Complaint and alleges the following against ESO Solutions, Inc. ("Defendant" or "ESO") based upon personal knowledge with respect to Plaintiff and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters:

### NATURE OF THE ACTION

1.　　Plaintiff brings this class action against Defendant for Defendant's failure to properly secure and safeguard protected health information ("PHI") as defined by the Health Insurance Portability and Accountability Act ("HIPAA"), medical information, and other personally identifiable information ("PII"), including without limitation: names, addresses, contact information, demographic

information, and medical treatment information (collectively, "Private Information"), for failing to comply with industry standards to protect information systems that contain that Private Information, and for failing to provide timely, accurate, and adequate notice to Plaintiff and other Class Members that their Private Information had been compromised. Plaintiff seeks, among other things, orders requiring Defendant to fully and accurately disclose the nature of the information that has been compromised and to adopt reasonably sufficient security practices and safeguards to prevent incidents like the disclosure in the future.

2.      ESO is a provider of software products for healthcare organizations and fire departments throughout the United States.one of the largest healthcare providers in the United States.

3.      On or about October 23, 2023, ESO discovered a data security incident where unauthorized third parties accessed and stole patient Private Information (the "Data Breach"). The Data Breach was wide-reaching and compromised the Private Information of over 2.9 million individuals.

4.      ESO also began notifying, via U.S. Mail, affected individuals including certain current and former patients.

5.      This case involves a breach by an unknown third party, resulting in the unauthorized disclosure of the Private Information of Plaintiff and Class Members by ESO to unknown third parties. As a result of ESO's failure to implement and

follow basic security procedures, Plaintiff's and Class Members' Private Information is now in the hands of criminals. Plaintiff and Class Members now and will forever face a substantial increased risk of identity theft. Consequently, Plaintiff and Class Members have had to spend, and will continue to spend, significant time and money in the future to protect themselves due to ESO's failures.

6.     Additionally, as a result of ESO's failure to follow contractually agreed upon, federally prescribed, industry standard security procedures, Plaintiff and Class Members received only a diminished value of the services ESO was to provide. ESO represented that it would maintain the confidentiality of Plaintiff and Class Members' Private Information obtained throughout the course of treatment.

7.     Accordingly, Plaintiff, individually and on behalf of all others similarly situated, alleges claims for negligence, breach of implied contract, and breach of fiduciary duty.

## **PARTIES**

8.     Plaintiff is a citizen and resident of Mooresboro, North Carolina. Plaintiff has obtained treatment at CaroMont Family Medicine, and CaroMont Reginal Hospital, facilities impacted in the Data Breach. In connection with that medical treatment, he provided his PII and PHI (Private Information)

9.     Upon information and belief, Plaintiff's Private Information was stored with ESO as part of its provision of services to various medical facilities throughout

3

the United States, including some or all of the medical facilities where Plaintiff received medical care.

10.    Plaintiff's Private Information was disclosed without authorization to an unknown third party as a result of the Data Breach.

11.    While ESO began notifying affected consumers on December 12, 2023, Plaintiff received notice of the Data Breach via email from ESO on or about December 19, 2023.

12.    Defendant ESO Solutions, Inc. is a Texas corporation with its principal place of business at 11500 Alterra Parkway, Suite 100, Austin, Texas 78758. Due to the nature of these services, ESO collects and electronically stores Private Information.

## JURISDICTION AND VENUE

13.    This Court has original jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) because at least one member of the putative Class, as defined below, are citizens of a different state than Defendant, there are more than 100 putative class members, and the amount in controversy exceeds $5 million exclusive of interest costs.

14.    This Court has personal jurisdiction over ESO because ESO maintains its principal place of business in this jurisdiction and is authorized to and does conduct substantial business in this jurisdiction.

4

15.     Venue is proper in this Court because a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in, was directed to, and/or emanated from this District.

## FACTUAL BACKGROUND

### A. Defendant's Business

16.     ESO offers an integrated suite of software products for EMS agencies, fire departments, and hospitals that are transforming the way first responders collect, share, report, and analyze critical information to improve community health and safety.

17.     The company, founded in 2004 and based in Austin, Texas, offers cloud-based logistical software, including management for billing, electronic health records, asset management, and more.

18.     According to a recent notification to the Attorney General of Maine, the attack, conducted by a ransomware organization, occurred on September 28th, 2023. The attacker used a tactic called double-extortion; data was first exfiltrated and then the hackers encrypted several company systems.

19.     After an investigation, ESO determined that 2.7 million patients were impacted. Exposed data may include names, dates of birth, phone numbers, medical record numbers, diagnosis information, treatment types, Social Security Numbers, injury information, and procedure information.

20.    To date, ESO has not yet disclosed full details of the Data Breach. Without such disclosure, questions remain as to the full extent of the Data Breach, the actual data accessed and compromised, and what measures, if any, ESO has taken to secure the Private Information still in its possession.

21.    Through this litigation, Plaintiff and Class Members seek to determine the scope of the Data Breach and the information involved, obtain relief that redresses Plaintiff's and Class Members' harms, and ensure ESO has proper measures in place to prevent another breach from occurring in the future.

**B.   *The Healthcare Sector is Particularly Susceptible to Data Breaches***

22.    ESO was on notice that companies in the healthcare industry are susceptible targets for data breaches.

23.    ESO was also on notice that the FBI has been concerned about data security in the healthcare industry. In August 2014, nearly ten years ago, after a cyberattack on Community Health Systems, Inc., the FBI began warning companies within the healthcare industry that hackers were targeting them. The warning stated that "[t]he FBI has observed malicious actors targeting healthcare related systems,

perhaps for the purpose of obtaining the Protected Healthcare Information (PHI) and/or Personally Identifiable Information (PHI)."[1]

24.    Healthcare data breaches have since skyrocketed. The healthcare sector reported the second largest number of data breaches among all measured sectors in 2018, with the highest rate of exposure per breach.[2] Indeed, when compromised, healthcare related data is among the most sensitive and personally consequential.

25.    A report focusing on healthcare breaches found that the "average total cost to resolve an identity theft-related incident . . . came to about $20,000," and that the victims were often forced to pay out-of-pocket costs for healthcare they did not receive in order to restore coverage.[3] Almost 50 percent of the victims lost their healthcare coverage as a result of the incident, while nearly 30 percent said their insurance premiums went up after the event. Forty percent of the customers were never able to resolve their identity theft at all. Data breaches and identity theft have a crippling effect on individuals and detrimentally impact the economy as a whole.[4]

---

[1] Jim Finkle, *FBI Warns Healthcare Firms that they are Targeted by Hackers*, Reuters (Aug. 2014), *available at*: https://www.reuters.com/article/us-cybersecurity-healthcare-fbi/fbi-warns-healthcare-firms-they-are-targeted-by-hackers-idUSKBN0GK24U20140820 (last accessed Jun. 16, 2023).

[2] Identity Theft Resource Center, *2018 End -of-Year Data Breach Report, available at*: https://www.idtheftcenter.org/2018-data-breaches/ (last accessed Jun. 16, 2023).

[3] Elinor Mills, *Study: Medical identity theft is costly for victims*, CNET (March 3, 2010), *available at:* https://www.cnet.com/news/study-medical-identity-theft-is-costly-for-victims/ (last accessed Jun. 16, 2023).

[4] *Id.*

26.    Healthcare related breaches have continued to rapidly increase because electronic patient data is seen as a valuable asset. "Hospitals have emerged as a primary target because they sit on a gold mine of sensitive personally identifiable information for thousands of patients at any given time. From social security and insurance policies, to next of kin and credit cards, no other organization, including credit bureaus, have so much monetizable information stored in their data centers."[5]

27.    The American Medical Association ("AMA") has also warned healthcare companies about the importance of protecting their patients' confidential information:

> Cybersecurity is not just a technical issue; it's a patient safety issue. AMA research has revealed that 83% of physicians work in a practice that has experienced some kind of cyberattack. Unfortunately, practices are learning that cyberattacks not only threaten the privacy and security of patients' health and financial information, but also patient access to care.[6]

28.    In the healthcare industry, the number one threat vector from a cyber security standpoint is phishing. Cybersecurity firm Proofpoint reports that "phishing

---

[5] Inside Digital Health, *How to Safeguard Hospital Data from Email Spoofing Attacks*, April 4, 2019, *available at*: https://www.idigitalhealth.com/news/how-to-safeguard-hospital-data-from-email-spoofing-attacks (last accessed Jun. 16, 2023).

[6] Andis Robeznieks, *Cybersecurity: Ransomware attacks shut down clinics, hospitals*, Am. Med. Ass'n (Oct. 4, 2019), https://www.ama-assn.org/practice-management/sustainability/cybersecurity-ransomware-attacks-shut-down-clinics-hospitals (last visited Jun. 16, 2023).

is the initial point of compromise in most significant [healthcare] security incidents, according to a recent report from the Healthcare Information and Management Systems Society (HIMSS). And yet, 18% of healthcare organizations fail to conduct phishing tests, a finding HIMSS describes as 'incredible.'"[7]

29.    One of the best protections against email related threats is security awareness training and testing on a regular basis. This should be a key part of a company's on-going training of its employees. "[S]ince phishing is still a significant, initial point of compromise, additional work needs to be done to further lower the click rate," the HIMSS report states. "This can be done through more frequent security awareness training, phishing simulation, and better monitoring of metrics pertaining to phishing (including whether there are any particular repeat offenders)."[8]

30.    As a major healthcare provider, ESO knew, or should have known, the importance of safeguarding the patients' Private Information entrusted to it and of the foreseeable consequences if that data was disclosed. This includes the significant costs that would be imposed on ESO's patients as a result of a breach. ESO failed,

---

[7] Aaron Jensen, Healthcare Phishing Statistics: 2019 HIMSS Survey Results (Mar. 27, 2019), https://www.proofpoint.com/us/security-awareness/post/healthcare-phishing-statistics-2019-himss-survey-results (last visited Jun. 16, 2023).

[8] *Id.*

however, to take adequate cybersecurity measures to prevent the Data Breach from occurring.

### C.  *ESO Obtains, Collects, and Stores Plaintiff's and Class Members' PHI*

31.    ESO obtains, collects, and stores a massive amount of its patients' protected health information and personally identifiable data.

32.    In connection with the services provided to its customers, ESO collects the Private Information of consumers, including Plaintiff.

33.    By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' Private Information, ESO assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff and Class Members' Private Information from disclosure.

34.    Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their Private Information and, as current and former patients, they rely on ESO to keep this information confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

### D.    *The Value of Private Information and the Effects of Disclosure*

35.    ESO was well aware that the information it collects is highly sensitive and of significant value to those who would use it for wrongful purposes.

36.    PHI is a valuable commodity to identity thieves. As the FTC recognizes, identity thieves can use this information to commit an array of crimes including identify theft, and medical and financial fraud.[9] Indeed, a robust cyber black market exists in which criminals openly post stolen PHI on multiple underground Internet websites, commonly referred to as the dark web.

37.    While credit card information and associated personally identifiable information can sell for as little as $1-$2 on the black market, protected health information can sell for as much as $363 according to the Infosec Institute.[10]

38.    PHI is particularly valuable because criminals can use it to target victims with frauds and scams that take advantage of the victim's medical conditions or victim settlements. It can be used to create fake insurance claims, allowing for the purchase and resale of medical equipment, or gain access to prescriptions for illegal use or resale.

39.    Medical identify theft can result in inaccuracies in medical records and costly false claims. It can also have life-threatening consequences. If a victim's health information is mixed with other records, it can lead to misdiagnosis or

---

[9]   Federal Trade Commission, *Warning Signs of Identity Theft, available at:* https://www.consumer.ftc.gov/articles/0271-warning-signs-identity-theft (last accessed Jun. 16, 2023).

[10]   Center for Internet Security, *Data Breaches: In the Healthcare Sector, available at:* https://www.cisecurity.org/blog/data-breaches-in-the-healthcare-sector/ (last accessed Jun. 16, 2023).

mistreatment. "Medical identity theft is a growing and dangerous crime that leaves its victims with little to no recourse for recovery," reported Pam Dixon, executive director of World Privacy Forum. "Victims often experience financial repercussions and worse yet, they frequently discover erroneous information has been added to their personal medical files due to the thief's activities."[11]

40.    The ramifications of ESO failure to keep its Class Members' PHI secure are long lasting and severe. Once PHI is stolen, fraudulent use of that information and damage to victims may continue for years.

41.    Approximately 21% of victims do not realize their identity has been compromised until more than two years after it has happened. [12] This gives thieves ample time to seek multiple treatments under the victim's name. Forty percent of consumers found out they were a victim of medical identity theft only when they received collection letters from creditors for expenses that were incurred in their names.[13]

---

[11] Michael Ollove, "The Rise of Medical Identity Theft in Healthcare," Kaiser Health News, Feb. 7, 2014, *available at*: https://khn.org/news/rise-of-indentity-theft/ (last accessed Jun. 16, 2023).

[12] *See* Medical ID Theft Checklist, *available at:* https://www.identityforce.com/blog/medical-id-theft-checklist-2 (last accessed Jun. 16, 2023).

[13] Experian, *The Potential Damages and Consequences of Medical Identify Theft and Healthcare Data Breaches ("Potential Damages"), available at:* https://www.experian.com/assets/data-breach/white-papers/consequences-medical-id-theft-healthcare.pdf (last accessed Jun. 16, 2023).

42.    ESO knew, or should have known, the importance of safeguarding its patients' Private Information entrusted to it and of the foreseeable consequences if its data security systems were breached. This includes the significant costs that would be imposed on Class Members as a result of a breach. ESO failed, however, to take adequate cybersecurity measures to prevent the Data Breach from occurring, creating long lasting and severe ramifications.

### E. Plaintiff and Class Members Have Suffered Damages

43.    This unauthorized access as disrupted the life of Plaintiff as he no longer has control over his Private Information, cannot stop others from viewing his Private Information, and cannot prevent criminals from misusing his Private Information.

44.    What's more, the Data Breach exposed Plaintiff to present and continuing threat to identity theft for the remainder of his life.

45.    Plaintiff has already spent several hours of his time attempting to mitigate the harm caused by the Data Breach. He anticipates spending considerable additional time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach.

46.    Plaintiff will continue to be at present, imminent, and continued increased risk of identity theft and fraud for years to come.

47.    Plaintiff suffers a present injury from the substantially increased risk of fraud, identity theft, and misuse resulting from his Private Information being placed in the hands of criminals. Plaintiff has a continuing interest in ensuring that his PII and PHI, which is the type that cannot be changed and upon information and belief remains in Defendant's possession, is protected and safeguarded from future breaches.

48.    Similarly, Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Class is incurring and will continue to incur such damages in addition to any fraudulent use of their Private Information.

49.    Despite all of the publicly available knowledge of the continued compromises of Private Information, ESO's approach to maintaining the privacy of ESO's patients' protected health information was lackadaisical, cavalier, reckless, or in the very least, negligent.

50.    In all contexts, time has constantly been recognized as compensable, and for many people, it is the basis on which they are compensated. Plaintiff and Class Members should be spared having to deal with the consequences of ESO's misfeasance.

51.    Once Private Information is stolen, fraudulent use of that information and damage to victims may continue for years. Consumer victims of data breaches

are more likely to become victims of identity fraud.[14]

52.    As a result of ESO's failure to prevent the Data Breach, Plaintiff and Class Members have suffered and will continue to suffer damages. They have suffered or are at increased risk of suffering:

a.  Actual identity theft;

b.  Unauthorized use and misuse of their PHI;

c.  The loss of the opportunity to control how their PHI is used;

d.  The diminution in value of their PHI;

e.  The compromise, publication, and/or theft of their PHI;

f.  Out-of-pocket costs associated with the prevention, detection, recovery and remediation from identity theft or fraud;

g.  Lost opportunity costs and lost wages associated with effort expended and the loss of productivity from addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest and recover from identity theft and fraud;

h.  Costs associated with placing freezes on credit reports;

---

[14] *2014    LexisNexis    True    Cost    of    Fraud    Study,    available    at:* https://www.lexisnexis.com/risk/downloads/assets/true-cost-fraud-2014.pdf (last accessed Jun. 16, 2023).

i.   Delay in receipt of tax refund monies;

j.   Lost opportunity and benefits of electronically filing of income tax returns;

k.   The present and continuing injury flowing from fraud and identity theft posed by their Private Information being placed in the hands of criminals;

l.   The continued risk to their Private Information, which remains in the possession of ESO and is subject to further breaches so long as ESO fails to undertake appropriate measures to protect the Private Information in its possession; and

m.  Current and future costs in terms of time, effort and money that will be expended to prevent, detect, contest, remediate and repair the impact of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

## F. ESO's Conduct Violates HIPAA

53.    Title II of HIPAA contains what are known as the Administrative Simplification provisions. 42 U.S.C. §§ 1301, et seq. These provisions require that the Department of Health and Human Services ("HHS") create rules to streamline the standards for handling PHI like the data Defendant left unguarded. The HHS has

subsequently promulgated five rules under authority of the Administrative Simplification provisions of HIPAA.

54.    ESO's Data Breach resulted from a combination of insufficiencies that indicate ESO failed to comply with safeguards mandated by HIPAA regulations and industry standards. First, it can be inferred from ESO's Data Breach that ESO either failed to implement, or inadequately implemented, information security policies or procedures in place to protect Plaintiff's and Class Members' PHI.

55.    Plaintiff's and Class Members' Private Information is "protected health information" as defined by 45 CFR § 160.103.

56.    45 CFR § 164.402 defines "breach" as "the acquisition, access, use, or disclosure of protected health information in a manner not permitted under subpart E of this part which compromises the security or privacy of the protected health information."

57.    45 CFR § 164.402 defines "unsecured protected health information" as "protected health information that is not rendered unusable, unreadable, or indecipherable to unauthorized persons through the use of a technology or methodology specified by the [HHS] Secretary[.]"

58.    Plaintiff's and Class Members' Private Information is "unsecured protected health information" as defined by 45 CFR § 164.402.

59.    Plaintiff's and Class Members' unsecured protected health information has been acquired, accessed, used, or disclosed in a manner not permitted under 45 CFR Subpart E as a result of the Data Breach.

60.    Based upon the breach notification letter, ESO reasonably believes Plaintiff's and Class Members' unsecured protected health information has been acquired, accessed, used, or disclosed in a manner not permitted under 45 CFR Subpart E as a result of the Data Breach.

61.    Plaintiff's and Class Members' unsecured protected health information acquired, accessed, used, or disclosed in a manner not permitted under 45 CFR Subpart E as a result of the Data Breach was not rendered unusable, unreadable, or indecipherable to unauthorized persons.

62.    ESO reasonably believes Plaintiff's and Class Members' unsecured protected health information acquired, accessed, used, or disclosed in a manner not permitted under 45 CFR Subpart E as a result of the Data Breach was not rendered unusable, unreadable, or indecipherable to unauthorized persons.

63.    Plaintiff's and Class Members' unsecured protected health information that was acquired, accessed, used, or disclosed in a manner not permitted under 45 CFR Subpart E as a result of the Data Breach, and which was not rendered unusable, unreadable, or indecipherable to unauthorized persons, was viewed by unauthorized persons.

64.     Plaintiff's and Class Members' unsecured protected health information was viewed by unauthorized persons in a manner not permitted under 45 CFR Subpart E as a result of the Data Breach.

65.     It is reasonable to infer that Plaintiff's and Class Members' unsecured protected health information that was acquired, accessed, used, or disclosed in a manner not permitted under 45 CFR Subpart E as a result of the Data Breach, and which was not rendered unusable, unreadable, or indecipherable to unauthorized persons, was viewed by unauthorized persons.

66.     It should be rebuttably presumed that unsecured protected health information acquired, accessed, used, or disclosed in a manner not permitted under 45 CFR Subpart E, and which was not rendered unusable, unreadable, or indecipherable to unauthorized persons, was viewed by unauthorized persons.

67.     After receiving notice that they were victims of a data breach that required the filing of a Breach Report in accordance with 45 CFR § 164.408(a), it is reasonable for recipients of that notice, including Plaintiff and Class Members in this case, to believe that future harm (including identity theft) is real and imminent, and to take steps to mitigate that risk of future harm.

68.     In addition, ESO's Data Breach could have been prevented if ESO implemented HIPAA mandated, industry standard policies and procedures for

securely disposing of PHI when it was no longer necessary and/or had honored its obligations to its patients.

69.    ESO's security failures also include, but are not limited to:

a.  Failing to maintain an adequate data security system to prevent data loss;

b.  Failing to mitigate the risks of a data breach and loss of data;

c.  Failing to ensure the confidentiality and integrity of electronic protected health information ESO creates, receives, maintains, and transmits in violation of 45 CFR 164.306(a)(1);

d.  Failing to implement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights in violation of 45 CFR 164.312(a)(1);

e.  Failing to implement policies and procedures to prevent, detect, contain, and correct security violations in violation of 45 CFR 164.308(a)(1);

f.  Failing to identify and respond to suspected or known security incidents; mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity in violation of 45 CFR

164.308(a)(6)(ii);

g.  Failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic protected health information in violation of 45 CFR 164.306(a)(2);

h.  Failing to protect against any reasonably anticipated uses or disclosures of electronic protected health information that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 CFR 164.306(a)(3);

i.  Failing to ensure compliance with HIPAA security standard rules by Defendant's workforce in violation of 45 CFR 164.306(a)(94);

j.  Impermissibly and improperly using and disclosing protected health information that is and remains accessible to unauthorized persons in violation of 45 CFR 164.502, *et seq.*

70.  Because ESO has failed to comply with industry standards, while monetary relief may cure some of Plaintiff's and Class Members' injuries, injunctive relief is necessary to ensure ESO's approach to information security is adequate and appropriate. ESO still maintains the protected health information and other sensitive information of Plaintiff and Class Members; and without the supervision of the Court via injunctive relief, Plaintiff's and Class Members' Private Information remains at risk of subsequent Data Breaches.

## G. ESO Failed to Comply with FTC Guidelines

71.     ESO was also prohibited by the Federal Trade Commission Act ("FTC Act") (15 U.S.C. §45) from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission ("FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act. See, e.g., FTC v. Wyndham Worldwide Corp., 799 F.3d 236 (3d Cir. 2015).

72.     The Federal Trade Commission ("FTC") has promulgated guides for businesses that highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.[15]

73.     In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cybersecurity guidelines for businesses.[16] The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that

---

[15] Federal Trade Commission, *Start With Security: A Guide for Business*, *available at:* https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf (last accessed Jun. 16, 2023).

[16] Federal Trade Commission, *Protecting Personal Information: A Guide for Business*, *available at*: https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last accessed Jun. 16, 2023).

is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.

74.    The FTC further recommends that companies not maintain PHI longer than is needed for authorization of a transaction; limit access to private data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.[17]

75.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

76.    ESO failed to properly implement basic data security practices. ESO's failure to employ reasonable and appropriate measures to protect against unauthorized access to patients' Private Information constitutes an unfair act or

---

[17]  FTC, *Start With Security*, *supra* note 16.

practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

77.    ESO was at all times fully aware of its obligation to protect the Private Information of patients because of its position as a leading healthcare provider. ESO was also aware of the significant repercussions that would result from its failure to do so.

## CLASS ACTION ALLEGATIONS

78.    Plaintiff brings this suit as a class action on behalf of himself and on behalf of all others similarly situated pursuant to Federal Rule of Civil Procedure 23.

79.    Plaintiff proposes the following Class definition, subject to amendment as appropriate:

> Nationwide Class:
>
> **All individuals residing in the United States whose Private Information was compromised in the ESO Data Breach announced by ESO on or about December 12, 2023.**

80.    Excluded from the Nationwide Class are the officers, directors, and legal representatives of ESO, and the judges and court personnel in this case and any members of their immediate families.

81.    Plaintiff reserves the right to modify or amend the definition of the proposed Class as additional information becomes available to plaintiff.

82.    <u>Numerosity</u>. The Class Members are so numerous that joinder of all

Members is impractical. The Class is comprised of over 2.9 million patients.

83.    <u>Commonality</u>. There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

a.  Whether and to what extent Defendant had a duty to protect the Private Information of Class Members;

b.  Whether Defendant was negligent in collecting and storing Plaintiff's and Class Members' Private Information;

c.  Whether Defendant had a duty not to disclose the Private Information of Class Members to unauthorized third parties;

d.  Whether Defendant took reasonable steps and measures to safeguard Plaintiff's and Class Members' Private Information

e.  Whether Defendant failed to adequately safeguard the Private Information of Class Members;

f.  Whether Defendant breached their duties to exercise reasonable care in handling Plaintiff's and Class Members' Private Information by storing that information on unsecured servers;

g.  Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

25

h.  Whether implied or express contracts existed between Defendant on the one hand, and Plaintiff and Class Members on the other;

i.  Whether Defendant had respective duties not to use the Private Information of Class Members for non-business purposes;

j.  Whether Defendant adequately, promptly, and accurately informed Plaintiff and Class Members that their Private Information had been compromised;

k.  Whether Plaintiff and Class Members are entitled to actual, damages, statutory damages, and/or punitive damages as a result of Defendant's wrongful conduct;

a.  Whether Plaintiff and Class Members are entitled to restitution as a result of Defendant's wrongful conduct;

b.  Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach; and

c.  Whether Plaintiff and Class Members are entitled to identity theft protection for their respective lifetimes.

84.  <u>Typicality</u>. Plaintiff's claims are typical of those of other Class Members because Plaintiff's Private Information, like that of every other Class Member, was disclosed by ESO. Plaintiff's claims are typical of those of the other

Class Members because, *inter alia*, all Members of the Class were injured through the common misconduct of HCA. Plaintiff is advancing the same claims and legal theories on behalf of herself and all other Class Members, and there are no defenses that are unique to Plaintiff. The claims of Plaintiff and those of Class Members arise from the same operative facts and are based on the same legal theories.

85.    Policies Generally Applicable to the Class. This class action is also appropriate for certification because ESO has acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Class as a whole. ESO's policies challenged herein apply to and affect Class Members uniformly and Plaintiff's challenge of these policies hinges on ESO's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

86.    Adequacy of Representation. Plaintiff will fairly and adequately represent and protect the interests of the Class in that she has no disabling conflicts of interest that would be antagonistic to those of the other Members of the Class. Plaintiff seeks no relief that is antagonistic or adverse to the Members of the Class and the infringement of the rights and the damages they have suffered are typical of other Class Members. Plaintiff has retained counsel experienced in complex

consumer class action litigation and in particular privacy class litigation, and Plaintiff intends to prosecute this action vigorously.

87.    <u>Superiority of Class Action</u>. The class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of class members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain class members, who could not individually afford to litigate a complex claim against large corporations, like HCA. Further, even for those class members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

88.    The nature of this action and the nature of laws available to Plaintiff and the Class make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and the Class for the wrongs alleged because ESO would necessarily gain an unconscionable advantage since ESO would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a

common course of conduct to which Plaintiff were exposed is representative of that experienced by the Class and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

89.    The litigation of the claims brought herein is manageable. ESO's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrate that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

90.    Adequate notice can be given to Class Members directly using information maintained in ESO's records.

91.    Unless a Class-wide injunction is issued, ESO may continue in its failure to properly secure the Private Information of Class Members, ESO may continue to refuse to provide proper notification to Class Members regarding the Data Breach, and ESO may continue to act unlawfully as set forth in this Complaint.

92.    Further, ESO has acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate.

**FIRST CAUSE OF ACTION**
**Negligence**
**(On Behalf of Plaintiff and the Class)**

93.     Plaintiff realleges paragraphs 1 through 88 above as if fully set forth herein. Plaintiff brings this claim on behalf of the Class set forth above.

94.     Plaintiff and the Class Members entrusted their Private Information to various medical and health care facilities , that in turn entrusted such information to ESO  on the premise and with the understanding that ESO would safeguard their information, use their Private Information for business or medical purposes only, and/or not disclose their Private Information to unauthorized third parties.

95.     ESO has full knowledge of the sensitivity of Private Information and the types of harm that Plaintiff and Class Members could and would suffer if Private Information was wrongfully disclosed.

96.     ESO knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of patients' Private Information involved an unreasonable risk of harm to Plaintiff and Class Members, even if the harm occurred through the criminal acts of a third party.

97.     ESO had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. This duty includes, among other things, designing, maintaining, and testing ESO's security protocols to ensure that Plaintiff's and Class Members' information in ESO's  possession was adequately secured and protected, and that employees tasked with maintaining such information

were adequately trained on security measures regarding the security of patients' personal and medical information.

98.    ESO had a duty to have procedures in place to detect and prevent the improper access and misuse of Plaintiff's and Class Members' Private Information.

99.    A breach of security, unauthorized access, and resulting injury to Plaintiff and the Class Members was reasonably foreseeable, particularly in light of the growing amount of data breaches for health care providers and other industries.

100.    Plaintiff and Class Members were the foreseeable and probable victims of any inadequate security practices and procedures. ESO knew or should have known of the inherent risks in collecting and storing the Private Information of Plaintiff and the Class, the critical importance of providing adequate security of that Private Information, and that it had inadequate employee training and education and IT security protocols in place to secure the Private Information of Plaintiff and the Class.

101.    ESO's own conduct created a foreseeable risk of harm to Plaintiff and Class Members. ESO's misconduct included, but was not limited to, its failure to take the steps and opportunities to prevent the Data Breach as set forth herein. ESO's misconduct also included its decisions not to comply with industry standards for the safekeeping and unauthorized disclosure of the Private Information of Plaintiff and Class Members.

102.   Plaintiff and the Class Members had no ability to protect their Private Information that was in ESO's possession.

103.   ESO was in a position to protect against the harm suffered by Plaintiff and Class Members as a result of the Data Breach.

104.   ESO had and continues to have a duty to adequately disclose that the Private Information of Plaintiff and Class Members within ESO's possession might have been compromised, how it was compromised, and precisely the types of information that were compromised and when. Such notice was necessary to allow Plaintiff and the Class Members to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their Private Information by third parties.

105.   ESO has admitted that the Private Information of Plaintiff and Class Members was wrongfully disclosed to unauthorized third persons as a result of the Data Breach.

106.   ESO, through its actions and/or omissions, unlawfully breached ESO's duties to Plaintiff and Class Members by failing to implement industry protocols and exercise reasonable care in protecting and safeguarding the Private Information of Plaintiff and Class Members during the time the Private Information was within ESO's possession or control.

107.   ESO improperly and inadequately safeguarded the Private Information of Plaintiff and Class Members in deviation of standard industry rules, regulations,

and practices at the time of the Data Breach.

108.   ESO, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and Class Members by failing to have appropriate procedures in place to detect and prevent dissemination of its patients' Private Information.

109.   ESO, through its actions and/or omissions, unlawfully breached its duty to adequately disclose to Plaintiff and Class Members the existence and scope of the Data Breach.

110.   But for ESO's wrongful and negligent breach of duties owed to Plaintiff and Class Members, the Private Information of Plaintiff and Class Members would not have been compromised.

111.   There is a close causal connection between ESO's failure to implement security measures to protect the Private Information of current and former patients and the harm suffered or risk of imminent harm suffered by Plaintiff and the Class. Plaintiff's and Class Members' Private Information was accessed as the proximate result of ESO's failure to exercise reasonable care in safeguarding such PHI by adopting, implementing, and maintaining appropriate security measures.

112.   Violation of statutes which establish a duty to take precautions to protect a particular class of persons from a particular injury or type of injury constitute negligence *per se.*

113.   Section 5 of the FTC Act prohibits ""unfair . . . practices in or affecting

33

commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as HCA, of failing to use reasonable measures to protect PHI. The FTC publications and orders described above also form part of the basis of ESO's duty in this regard.

114.   ESO violated Section 5 of the FTC Act by failing to use reasonable measures to protect Plaintiff's and Class Members' Private Information and not complying with applicable industry standards, as described in detail herein. ESO's conduct was particularly unreasonable given the nature and amount of Private Information they obtained and stored, and the foreseeable consequences of a data breach including, specifically, the damages that would result to Plaintiff and Class Members.

115.   ESO's violation of Section 5 of the FTC Act constitutes negligence *per se.*

116.   Plaintiff and Class Members are within the class of persons that the FTC Act was intended to protect.

117.   The harm that occurred as a result of the Data Breach is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and Class Members.

118.   ESO's violations of HIPAA also independently constitute negligence *per se*.

119.   HIPAA privacy laws were enacted with the objective of protecting the confidentiality of patients' healthcare information and set forth the conditions under which such information can be used, and to whom it can be disclosed. HIPAA privacy laws not only apply to healthcare providers and the organizations they work for, but to any entity that may have access to healthcare information about a patient that—if it were to fall into the wrong hands—could present a risk of harm to the patient's finances or reputation.

120.   Plaintiff and Class Members are within the class of persons that HIPAA privacy laws were intended to protect.

121.   The harm that occurred as a result of the Data Breach is the type of harm HIPAA privacy laws were intended to guard against.

122.   As a direct and proximate result of ESO's negligence, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity how their Private Information is used; (iii) the compromise, publication, and/or theft of their Private Information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information; (v) lost opportunity costs associated with effort expended and the loss of productivity

addressing and attempting to mitigate the actual and future consequences of the Data

Breach, including but not limited to efforts spent researching how to prevent, detect,

contest, and recover from tax fraud and identity theft; (vi) costs associated with

placing freezes on credit reports; (vii) the present as do continuing  risk to their

Private Information, which remain in ESO's possession and is subject to further

unauthorized disclosures so long as ESO fails to undertake appropriate and adequate

measures to protect the Private Information of patients and former patients in its

continued possession; and(viii) future costs in terms of time, effort, and money that

will be expended to prevent, detect, contest, and repair the impact of the Private

Information compromised as a result of the Data Breach for the remainder of the

lives of Plaintiff and Class Members.

## SECOND CAUSE OF ACTION
### Breach of Third Party Beneficiary Contract
### (On Behalf of Plaintiff and the Class)

123.    Plaintiff realleges paragraphs 1 through 88 above as if fully set forth

herein.

124.   Plaintiff and Class Members were required to provide their Private

Information to various healthcare facilities a condition of receiving medical care,

and these facilities in turn contract to use ESO products.

125.   Plaintiff and Class Members paid money to ESO in exchange for goods

and services, as well as ESO's promises and obligations to protect Private

Information from unauthorized disclosure.

126.    By providing public healthcare services, Defendant promised with the various healthcare facilities where Plaintiff and Class Members received services that Defendant would only disclose protected health information and sensitive information under certain circumstances, none of which relate to the Data Breach.

127.    By providing public healthcare services, Defendant promised to comply with HIPAA standards and to make sure that Plaintiff's and Class Members' protected health information would remain protected, and in so promising Plaintiff and Class Members were third party beneficiaries to those promises and assurances.

128.    Implicit in the agreement between ESO and these healthcare facilities, was ESO obligation to use and protect the Private Information of Plaintiff and Class Members for business purposes only, take reasonable steps to secure and safeguard that Private Information, and not make unauthorized disclosures of the Private Information to unauthorized third parties.

129.    Further, implicit in the agreement, ESO was obligated to provide Plaintiff and Class Members with prompt and sufficient notice of any and all unauthorized access and/or theft of their protected health information and other Private Information.

130.    Without such implied contracts, Plaintiff and Class Members would not have provided their Private Information to various healthcare facilities impacted in

the Data Breach.

131.   ESO had an implied duty to reasonably safeguard and protect the Private Information of Plaintiff and Class Members from unauthorized disclosure or uses.

132.   ESO breached the contracts with the impacted healthcare facilities where Plaintiff and Class Members ere patients  by failing to reasonably safeguard and protect Plaintiff's and Class Members' Private Information, which was compromised as a result of the Data Breach.

133.   ESO further breached the contracts with Plaintiff and Class Members by failing to comply with its promise to abide by HIPAA.

134.   ESO further breached the contracts to which Plaintiff and Class Members were beneficiaries by failing to ensure the confidentiality and integrity of electronic protected health information ESO created, received, maintained, and transmitted in violation of 45 CFR 164.306(a)(1).

135.   ESO further breached the implied contracts with by failing to implement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights in violation of 45 CFR 164.312(a)(1).

136.   ESO further breached the contracts with by failing to implement

policies and procedures to prevent, detect, contain, and correct security violations in violation of 45 CFR 164.308(a)(1).

137.    ESO further breached the contracts with by failing to identify and respond to suspected or known security incidents; mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity in violation of 45 CFR 164.308(a)(6)(ii).

138.    ESO further breached the contracts by failing to protect against any reasonably anticipated threats or hazards to the security or integrity of electronic protected health information in violation of 45 CFR 164.306(a)(2).

139.    ESO further breached the contracts by failing to protect against any reasonably anticipated uses or disclosures of electronic protected health information that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 CFR 164.306(a)(3).

140.    ESO further breached the implied contracts by failing to ensure compliance with the HIPAA security standard rules by its workforce violations in violation of 45 CFR 164.306(a)(94).

141.    ESO further breached the implied contracts by impermissibly and improperly using and disclosing protected health information that is and remains accessible to unauthorized persons in violation of 45 CFR 164.502, *et seq*.

142.    ESO further breached the implied contracts by failing to design,

implement, and enforce policies and procedures establishing physical administrative safeguards to reasonably safeguard protected health information, in compliance with 45 CFR 164.530(c).

143.   ESO further breached the implied contracts by otherwise failing to safeguard Plaintiff's and Class Members' PHI.

144.   ESO's failures to meet these promises constitute breaches of the implied contracts.

145.   Because ESO allowed unauthorized access to Plaintiff's and Class Members' PHI and failed to safeguard the Private Information, ESO breached its contracts with Plaintiff and Class Members.

146.   ESO breached its contracts by not meeting the minimum level of protection of Plaintiff's and Class Members' PHI.

147.   As a direct and proximate result of ESO's breach of its  contracts with the impacted healthcare facilities which provided medical services to Plaintiff and Class Members  , Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity how their Private Information is used; (iii) the compromise, publication, and/or theft of their Private Information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information; (v) lost opportunity costs associated

with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their Private Information, which remains in ESO's possession and is subject to further unauthorized disclosures so long as ESO fails to undertake appropriate and adequate measures to protect the Private Information of customers/patients and former customers/patients in its continued possession; and (viii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Private Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members,

148.    As a direct and proximate result of ESO's breach of its implied contracts with Plaintiff and Class Members, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiff on behalf of herself and all others similarly situated, pray for relief as follows:

a.  For an Order certifying the Class as defined herein, and appointing Plaintiff and her Counsel to represent the Class;

b.  For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and the Class Members' Private Information, and from refusing to issue prompt, complete, and accurate disclosures to Plaintiff and Class Members;

c.  For equitable relief compelling Defendant to use appropriate cyber security methods and policies with respect to Private Information collection, storage, and protection, to disclose with specificity to Class Members the type of Private Information compromised and enjoining Defendant's conduct requiring it to implement proper data security practices, specifically:

  i.  prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

  ii.  requiring Defendant to protect, including through encryption, all data collected through the course of its business in accordance with all applicable regulations, industry standards, and laws;

  iii.  requiring Defendant to delete, destroy, and purge the Private Information of Plaintiff and the Class members unless Defendant can provide to the Court reasonable justification for the retention and use

of such information when weighed against the privacy interests of Plaintiff and the Class members;

iv. requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the personal identifying information of Plaintiff's and the Class members' Private Information;

v. requiring Defendant to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

vi. requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring;

vii. requiring Defendant to audit, test, and train its security personnel regarding any new or modified procedures;

viii. requiring Defendant to segment data by, among other things, creating firewalls and access controls so that if one area of Defendant's network is compromised, hackers cannot gain access to other portions of Defendant's systems;

ix.  requiring Defendant to conduct regular database scanning and securing checks;

x.  requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling PHI, as well as protecting the Private Information of Plaintiff and the Class members;

xi.  requiring Defendant to routinely and continually conduct internal training and education, and on an annual basis to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

xii.  requiring Defendant to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Defendant's policies, programs, and systems for protecting Private Information;

xiii. requiring Defendant to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Defendant's information networks for threats,

both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

xiv.   requiring Defendant to meaningfully educate all Class members about the threats that they face as a result of the loss of their confidential Private Information to third parties, as well as the steps affected individuals must take to protect themselves;

xv.   requiring Defendant to implement logging and monitoring programs sufficient to track traffic to and from Defendant's servers;

xvi.   requiring Defendant to design, maintain, and test its computer systems to ensure that PII/PHI in its possession is adequately secured and protected;

xvii.   requiring Defendant to disclose any future data breaches in a timely and accurate manner;

xix.   requiring Defendant's employees to change their passwords on a timely and regular basis, consistent with best practices; and

xx.   requiring Defendant to provide lifetime credit monitoring and identity theft repair services to Class members.

d.   For an award of damages, including actual, nominal, and consequential damages, as allowed by law in an amount to be determined;

e.   For an award of attorneys' fees, costs, and litigation expenses, as allowed by

law;

f.      For prejudgment interest on all amounts awarded; and

g.      Such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.


Date: December 29, 2023                    Respectfully submitted,

                                           */s/ Bruce W. Steckler*
                                           Bruce W. Steckler
                                           Texas Bar No. 00785039
                                           Paul D. Stickney, Of Counsel
                                           Texas Bar No. 00789924
                                           **STECKLER WAYNE & LOVE PLLC**
                                           12720 Hillcrest Rd., Suite 1045
                                           Dallas, Texas 75230
                                           Telephone: (972) 387-4040
                                           Facsimile: (972) 387-4041
                                           bruce@swclaw.com
                                           judgestick@gmail.com


                                           **MORGAN & MORGAN**
                                           **COMPLEX LITIGATION GROUP**
                                           John A. Yanchunis
                                           Texas Bar No. 22121300
                                           201 N. Franklin Street, 7th Floor
                                           Tampa, Florida 33602
                                           Telephone: (813) 318-5189
                                           Facsimile: (813) 222-2496


                                           ***Attorneys for Plaintiff and the Proposed***
                                           ***Class***